10776

STATE v. MASON

(110 S. E. 128)

1. OFFICERS—COUNTY TREASURER, WHO HELD OVER FOR ANOTHER TERM WITHOUT QUALIFICATION, HELD OFFICE UNTIL QUALIFICATION OF SUCCESSOR.—Where County Treasurer, who had taken oath of office and given bond and had served for several terms, was nominated for another term, under Civ. Code 1912, § 440, but did not receive the commission from the Governor, nor take oath nor give bond, but continued to act until a successor was appointed and had qualified, he was county treasurer during such time within Cr. Code 1912, § 544, making it a crime to fail to pay moneys to successor, even though he had not given the bond and taken the oath, notwithstanding Const. Art. 1, § 11, providing that the terms of all officers shall be for a specified period.

2. CRIMINAL LAW—CHARGE ON WEIGHT OF EVIDENCE HELD HARMLESS IN VIEW OF ADMITTED FACTS.—In prosecution of county treas-

urer for failure to turn funds over to successor in violation of
Cr. Code 1912, § 544, in which defendant claimed that he was not
the county treasurer at the time the offense was alleged to have
been committed, charge that defendant was the county treasurer
at such time, if a charge on the weight of the evidence in violation
of Const. Art. 5, § 26, was harmless, where the defendant was in
fact the county treasurer at such time under the admitted facts.

Before PEURIFOY, J., Hampton, June, 1921.    Affirmed.

W. A. Mason indicted for failure, as County Treasurer,
to turn over funds of office to his successor, and upon con-
viction appeals.

The testimony, charge, and exceptions follow:

## TESTIMONY

R. E. Jones, sworn:

I am an accountant from the office of the Comptroller
General.    I made an audit of the books of W. A. Mason,
Treasurer of Hampton County, in November and Decem-
ber, 1920.    My audit showed that W. A. Mason, as Treasurer
of Hampton County, was short $17,865.43.    The Treasurer
was short this amount after giving him credit for every-
thing that he was entitled to.    He should have had in his
hands as County Treasurer when he was succeeded by R. E.
Causey the above-stated sum, in addition to that which he
turned over to his said successor.    My audit showed that as
County Treasurer the defendant did receive in his hands the
said sum of $17,865.43.    Mr. Mason admitted to me that
he was short, but that he did not know the amount of the
shortage.    I gave him every opportunity to explain this
shortage or to correct me if I had made any mistake.    He
worked with me several days, but could not discover where
I had made any error and admitted to me the correctness of
my audit and that he was short.

There was introduced in evidence the following:    Letter
of W. A. Mason to Governor R. A. Cooper, reading as fol-
lows:    "I hereby tender my resignation as County Treas-

urer of Hampton County to take effect on December 1, 1920."

Commissions to W. A. Mason as County Treasurer, dated March 3, 1911, April 9, 1913, and February 25, 1915, duly signed by the Governor and the Secretary of State of the State of South Carolina, with the Great Seal of the State thereo affixed, all of which said commissions recite, inter alia, that the same shall continue in force for the full term provided by law.

All books, papers and records belonging to the Treasurer's and the Auditor's offices for Hampton County, and settlement sheets from the office of the Comptroller General. These show that on December 10, 1920, defendant should have had in his hands as County Treasurer $17,865.43 of official funds of the County and State.

### Cross-Examination

I am familiar with the Treasurer's books, as I handled the Treasurer's office in Colleton County for a number of years. I do not consider this a book shortage. The books show that, but there would be no other way to check the Treasurer than by books kept by him and by the Auditor. The books show that W. A. Mason, as County Treasurer, was short the said sum of $17,865.43.

R. E. Causey, sworn:

I am Treasurer of Hampton County, having been commissioned on December 10, 1920. My predecessor in office was W. A. Mason, who, on December 10, 1920, turned over to me all books and papers belonging to the Treasurer's office and certain moneys, but he did not turn over to me all the moneys which the books showed that he should have had in his hands as County Treasurer. The records showed that in addition to what he did turn over to me he should have had on hand, the same having been received by him as County Treasurer the sum of $17,865.43. I made demand on him for this amount and he stated that he did not have

it. He did not turn this amount over to me within 30 days after I succeeded him, and has not yet turned same over to me.

No cross-examination.

It was admited by the State that W. A. Mason did not file any bond in the office of the Clerk of Court since 1913.

State rests.

W. A. Mason, sworn:

I first took office as County Treasurer of Hampton County on January 3, 1911. Took the oath of office and gave bond for $20,000. I ran for office in 1912, was nominated and appointed by the Governor, gave bond for $20,000, and took the oath of office. I ran again in 1914 and was nominated. I did not at that time receive a commission from the Governor, did not take the oath of office, and did not give the bond. I continued to exercise the powers of County Treasurer under the laws of the State, and collected the taxes. The County Treasurer is charged with the entire amount of taxes shown on the Treasurer's duplicate made up by the auditor, and is credited with the paid vouchers for the Superintendent of Education, Supervisor, receipts from State Treasurer, abatements, error sheets, executions returned nulla bona, and cash on hand. I assisted Mr. Jones all I could. I told him there would be a shortage, but I referred to an item of taxes that I did not know had been collected and deposited, and to some old checks and tax receipts which they would not give me credit for. That particular item of taxes just mentioned I found upon investigation had been deposited by me in the bank, as County Treasurer. I did not take the amount they claim I am short, nor did I misappropriate any money of the county, nor use it for any purpose. I so stated to the officers who were looking into the matter and I tried to assist them all I could. I told Mr. Jones about a $5,000 note in the Superintendent's office and he allowed me credit for it. I sent in my resignation to the Governor immedi-

ately after I learned that I was góing to be short. I cannot explain the shortage unless it is due to errors in the book-keeping. I swear that I did not make away with this money, did not get this money, and did not have any money collected as County Treasurer that I failed to turn over to my successor.

## Cross-Examination

I will not swear that I did not get credit for every note. I had every effort to check this. Mr. Jones and Mr. Stanley rendered me every assistance. They helped me and gave me every chance to show where the shortage occurred. I worked on it day after day and could not find it. It looks as if his report is correct. I found one note and got credit for it. I said the shortage was due to an error in bookkeeping. The books in the Treasurer's office were kept partly by me and partly by Mr. Webb. I was responsible for everything that went on in the office. I cannot point out any errors in the books or in the report. While I have had no bond since 1913, I did not inform any one of this until this question came up, and I performed all the duties of a County Treasurer, collected the taxes, collected money for the county, signed county notes, and received the salary of a County Treasurer. I was County Treasurer up until Mr. Causey succeeded me, and when my successor was appointed, I turned over the keys to him. In 1919 I signed the annual settlement sheet, and it was correct to the best of my knowledge and belief. I do not think I stated that my bond was responsible for the $2,100 shortage shown therein. I think I made the statement that my bond was responsible, or I was responsible, or something to that effect. I do not deny the correctness of the report, and I cannot point out any error or mistake. I have not tried to. I went into the office with Mr. Jones and checked every book and everything else in there and I tried to find the shortage. The only way to keep the record straight

is by keeping a set of books, and the Treasurer's books should show the correct amount of money deposited by him. If the books show a shortage of $17,865.43, I do not know where it went. I did not turn it over to my successor, though he made a demand on me for it; I did not have it. I turned over to him in the neighborhood of $5,000, and, according to the report, they had me charged with $22,881.27. From that report it looks as though my books showed that I have had that $17,865.43. I do not deny that it came into the office, but I do not know what became of it if it went in there.

Mr. Warren: When you were running for office in 1911, what was your financial condition?

Mr. Murdaugh: We object, your Honor; that has not a thing in the world to do with this case.

The Court: Objection sustained.

(Objection noted by the stenographer.)

Mr. Warren: Certainly, be competent that he had not taken the money, did not have it in his hands.

The Court: Well, I will let him testify to it.

Mr. Warren: State your financial condition then compared with your financial condition now.

Witness: When I come here with about $1,500.

The Court: Don't go into that.

### JUDGE'S CHARGE

Now, Mr. Foreman and gentlemen of the jury, you have been very patiently and very attentively listening to the testimony and to the arguments in the case, and if you will give me your attention just for a few moments the responsibility will then be upon you to reach a verdict. The State indicts the defendant, W. A. Mason, for failing and refusing to turn over certain moneys, that it alleges that he collected as County Treasurer, to his successor in office within 30 days after he relinquished the office. That's the substance of the charge; you will have the indictment;

you may read in detail if you desire. It alleges that he was elected Treasurer in 1911, and that he qualified as such and entered upon the duties of the office, and that he performed until he was relieved by his successor, R. E. Causey. During the time he was, he collected the funds of the county as Treasurer, and then when he went out of office he failed and refused to turn over the money to his successor within 30 days, and it alleges that the amount of $17,865.43. The defendant enters a plea of not guilty to the charge, and that raises the issue for you to try. The burden is on the State to prove its case beyond a reasonable doubt, and a reasonable doubt just what the term implies. A doubt for which you can give a reason—it does not mean any fanciful doubt, or whimsical doubt, but it means a strong, substantial doubt, arising in and growing out of the testimony.

Now, the specific charges I·have stated, refusal to turn over the money. The section upon which the indictment is brought I will read to you. There is very little law in the case. The law is very simple and very plain, and it is set out in this section that I will read you now. (The Judge read Section 544 of the Criminal Code of South Carolina, 1912.)

Now, that's the law on the subject, so it becomes a question of fact for you to decide. I charge you if he was County Treasurer—and he says he was—and admits that he was elected and that he took the oath and that he gave bond. Now, I charge you as a matter of law if he went into the exercise of his duties, and entered into bond, then he would be a county official until his successor was elected and qualified, and therefore it makes no difference in this case whether or not he was commissioned under the laws— time he was elected or not, having gone into the office and having taken the oath, and having given bond the law would hold him responsible for all moneys that come into his hands as County Treasurer, the law would require him to turn over to his successor within 30 days after his successor

qualified. So I charge you further, if he received the funds of the county as County Treasurer, then he was bound to account for them, and when he went out of the office he was bound—he was bound to turn over to his successor, and therefore under the reading of this statute you will observe it does not say about the motive that may have actuated him or the intent. Therefore, he is not charged with stealing money, or misappropriating or embezzlement, but he is charged with refusal to turn over. I charge you if he received the money of the county, and failed and refused to turn it over, then he would be guilty. The motive of the intent is immaterial; if he received the money and failed and refused to turn it over within 30 days, then he would be guilty; if he did not receive it, why, of course he would not have it to turn over. I charge you further, Mr. Foreman and gentlemen, that if the money come into his hands, or any part as County Treasurer, that it was his duty to have turned it over at the time he turned over his office to his successor, and if he did not have it, he should have had it, if he received it and did not disburse it according to law. So it comes back to the wording of the statute if he received it as County Treasurer, and failed and refused to turn it over, he would be guilty. I do not think there is any more law in the case, just a question of fact for you to decide under the testimony, and the exhibits that have been introduced in evidence. As I stated, the burden is on the State to prove his guilt beyond a reasonable doubt. If you find him guilty, write the word "guilty," and sign your name as foreman. If there is a reasonable doubt as to his guilt, write the words "not guilty" and sign your name as foreman.

The Court: Anything else, Mr. Solicitor?

Mr. Murdaugh: The jury should find an amount less than seventeen thousand, and still he would be liable.

The Court: That is correct; it is not necessary for the State to prove $17,865.43, the amount so collected by him,

and he failed and refused to turn over, if you should find
that he collected any amount less than that as County Treas-
urer, and failed and refused to turn that over he would be
guilty.

### EXCEPTIONS

1. Because the Circuit Judge erred, it is submitted, in
charging the jury as follows, to wit: "I charge you if he
was County Treasurer, and he says he was, and admits he
was elected and that he took the oath and that he gave
bond"—the error being:

(a) That this was a charge upon the facts in violation of
the constitutional inhibition.

(b) That it was an unintentional misstatement of the
admissions which the defendant made.

(c) That in view of the contentions of the defendant
and his plain testimony that he had not given bond, such
charge was calculated to mislead the jury.

(d) That it being a positive statement of the Court
that defendant gave bond, and defendant's positive state-
ment being that he had not given bond, such a charge was
prejudicial in expressly or impliedly conveying to the jury
the amount of weight and credibility which the Court
thought should attach to the defendant's testimony; in short,
it conveyed to the jury the impression that the Court dis-
paraged the testimony of the defendant.

2. Because the Court erred in refusing to charge the
first request to charge, which was as follows:

"I charge you that under the Constitution of this State
the terms of office of all officers shall be for some speci-
fied period."

It is submitted that the request stated a quotation from
Article 1, § 2, of the Constitution of South Carolina.

3. Because the Court erred in refusing to charge the
defendant's second request to charge, which was as fol-
lows:

"I charge you that in the case at bar before you can convict the defendant you must find that he was County Treasurer of Hampton County, holding a commission from the Governor and properly qualified, that it to say, that he had taken the oath of office as prescribed by law and had given the bond as required by law."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court, although read in presence of the jury, and was applicable to the issues of the case.

4. Because the Court erred in refusing to charge the defendant's third request to charge, which was as follows:

"I charge you that you must find that the time of the alleged offense under the indictment he was duly commissioned and properly qualified, and that the alleged offense occurred during the specific term provided by law. If you find from the evidence that he was either not qualified under the laws of this State or did not hold a commision from the Governor for a definite and specific term as I have charged you, then the defendant would not be amenable to the section of the Code under which he is indicted, and you must bring in a verdict of not guilty."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

5. Because the Court erred in refusing to charge the defendant's fourth request to charge, which was as follows:

"I charge you that the laws of this State provide that all persons before they become County Treasurers must both hold an appointment for a specific, that is a definite and fixed term, not variable, must be bonded for such term of office, and must give the oath of office provided by the Constitution and laws of this State, and if such person fails in either of the above respects he is not such County Treasurer, and as the section of the Code under which the indictment

in this case is laid refers only to County Treasurers, such person would not be liable under such section of the Code."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

6. Because the Court erred in refusing to charge the defendant's fifth request to charge, which was as follows:

"If you find that the defendant in this case was not appointed and qualified, at the time of the alleged offense, that is in December, 1920, then he would not be County Treasurer, and your verdict in this case would be not guilty."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

7. Because the Court erred in refusing to charge the defendant's sixth request to charge, which was as follows:

"I charge you that Section 579 of the Criminal Code of South Carolina makes provision for the prosecution of persons who exercise the duties of County Treasurer without authority and makes them punishable upon conviction for so doing; but I charge you that the indictment in this case makes no such charge against Mason, the defendant. The defendant here, by this indictment, is charged with a violation of another section of the Code. The defendant is charged with being the County Treasurer, and that is a material portion of this indictment and must be proved beyond a reasonable doubt."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in the presence of the jury, and was applicable to the issues of the case.

8. Because the Court erred in refusing to charge the defendant's seventh request to charge, which was as follows:

"That makes it necessary that the State prove that the defendant was County Treasurer by appointment of the Governor for a specific, fixed, and definite term, was properly qualified by taking the oath of office and giving the bond for $20,000 as provided by law."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

9.    Because the Court erred in refusing to charge the defendant's eighth request to charge, which was as follows:

"I charge you that if you find that Mason had no bond as County Treasurer at the time of the alleged offense, that is in 1920 or during that year, then he would not be County Treasurer as charged in the indictment in this case, and you must render a verdict of not guilty."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in the presence of the jury, and was applicable to the issues of the case.

10.    Because the Court erred in refusing to charge the defendant's ninth request to charge, which was as follows:

"I charge you that if you find that the defendant, Mason, was actually commissioned by the Governor in 1915, but did not at that time qualify by taking the oath of office and giving the bond provided by law, then, under the indictment in this case, your verdict must be not guilty because he would not be County Treasurer."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

11.    Because the Court erred in refusing to charge the defendant's tenth request to charge, which was as follows:

"I charge you that even though you may find that the defendant, Mason, violated the law in numerous other

particulars than is charged in the indictment in this case, still you are confined in your deliberations to the specific charge as laid in this indictment."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

12.    Because the Court erred in refusing to charge the defendant's eleventh request to charge, which was as follows:

"I charge you that the specific misdemeanor charged in this case and the only question besides the matters that I have heretofore mentioned, that you are to pass upon, is whether or not W. A. Mason as County Treasurer, being under $20,000 bond as required by law, failed or refused to turn over to his successor in office the amount mentioned in the indictment remaining in his hands as such officer within 30 days from the time when his successor entered upon the duties of his office."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

13.    Because the Court erred in refusing to charge the defendant's twelfth request to charge, which was as follows:

"I charge you that you must find as a positive fact proved to your satisfaction beyond a reasonable doubt that on the date mentioned in the indictment in December, 1920, W. A. Mason had official money remaining in his hands as County Treasurer before you can find a verdict of guilty."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court though read in presence of the jury, and was applicable to the issues of the case.

14. Because the Court erred in refusing to charge the defendant's thirteenth request to charge, which was as follows:

"And if you find that any official money was embezzled or stolen or misappropriated so that the official money did not remain in the hands of W. A. Mason at the date he retired from office, or within 30 days thereafter, then your verdict under the indictment in this case would be not guilty. I charge you that it must be proved that the money was official money which remained in the hands of Mason at the time he retired from office."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

15. Because the Court erred in refusing to charge the defendant's fourteenth request to charge, which was as follows:

"I charge you that the section of the Criminal Code, under which Mason is indicted, by the words used therein, 'besides his liability on his official bond' presupposes that such officer was under an official bond, and this fact must be proved to your satisfaction beyond a reasonable doubt before you can find the defendant guilty under the indictment in this case."

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

16. Because the Court erred in refusing to charge the defendant's fifteenth request to charge, which was as follows:

"I charge you that the section of the Code under which Mason is indicted must be strictly construed and wherever the Court has used the words, 'remaining in his hands,' those words have a strict construction. 'Remain,' as de-

fined by Webster, means 'to be left after others have been removed or destroyed; to be left after a number or quantity have been subtracted or cut off.' "

It is submitted that the request stated a correct proposition of law, was not charged in the general charge of the Court although read in presence of the jury, and was applicable to the issues of the case.

17. Because the Court erred in delivering a charge to the foreman of the jury without the presence of the entire jury, such charge being in addition to the general charge already made to the entire jury; it being submitted that the law requires a direct charge to the jury, not to one member thereof.

18. Because the Court erred in charging the jury as follows:

"I charge you further, Mr. Foreman and gentlemen, that if the money came into his hands that it was his duty to have turned it over—and if he did not have it he should have it."

It being submitted that this was both prejudicially perplexing and imposition on the defendant of greater duties than the law imposes.

19. Because the Court, after a general resume of the law of the case according to the views of the Court, erred in charging as follows:

So it comes back to the wording of the statute, if he received it as County Treasurer, and failed and refused to turn it over, he would be guilty. I do not think there is any more law in the case."

It being submitted that the error was—

(a) In virtually telling the jury to convict the defendant even if the official funds had been properly expended according to law.

(b) In limiting the jury to the consideration of only the matters referred to in the Court's quoted summary as the only law in the case.

(c) In prejudicially summarizing the law applicable to the case as being contained in the quoted charge.

(d) In virtually directing a verdict of guilty.

20. The Court erred in refusing to allow the defendant to testify as to his financial condition when he took office and when he sent in his alleged resignation, and to give the jury the benefit of a comparison of two conditions; it being submitted that such a query was pertinent to the issues raised, and that sustaining the objection was prejudicial to the defendant and deprived him of a legal right to this testimony.

*Messrs. George Warren* and *Hugh O. Hanna,* for appellant, cite: *Judge cannot refer directly to testimony in his charge:* 47 S. C., 489; Const. 1895, Art. V. Sec. 26; Const. 1865, Art. IV., Sec. 26. *Charge on facts:* 107 S. R., 152; 82 S. E., 421; 67 S. E., 453; 67 S. E., 318; 39 S. E., 761; 29 S. E., 209; 27 S. E., 662; 27 S. E., 648; 27 S. E., 527.

*Mr. Randolph Murdaugh, Solicitor,* for the State, cites: *Judge can assume as a fact that which was admitted or proved:* 94 S. C., 92; 49 S. C., 550; 47 S. C., 489; 97 S. C., 116. *Mason was Treasurer until his successor was commissioned and qualified:* 92 S. C., 399; 34 S. C. L., 92; 29 S. C. L., 138; 7 S. C., 21; 41 S. C. L., 227; 86 S. C., 503. *Chargeable with money that he should have had in hand:* 46 S. C., 554.

December 13, 1921.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant was indicted under Section 544 of the Criminal Code, which is as follows:

"It shall be the duty of every Sheriff, Judge of Probate, Clerk of the Court of Common Pleas, County Treasurer, and any other State or County officer intrusted with funds by virtue of his office, upon retiring from office, to turn

over to his successor all moneys received by him as such officer, and remaining in his hands as such officer, within thirty days from the time when his successor shall have entered upon the duties of his office, in the same manner as he is required by law to turn over the furniture, books and papers; and the successor shall receive and be responsible for the moneys so turned over to him, in the same manner as he is liable for other moneys received by him officially; and any public officer neglecting or refusing obedience to the requisition herein contained shall be held guilty of a misdemeanor, and, upon conviction, shall be liable to a fine of one thousand dollars and imprisonment not exceeding twelve months, besides his liability on his official bond, at the suit of any person aggrieved by such neglect. * * *"

The charge was that, as County Treasurer of Hampton County, he failed to turn over to his successor in office money received by him and remaining in his hands as such officer.

The jury returned a verdict of guilty, and he appealed from the sentence imposed on him.

The exceptions are so numerous and raise so many questions that, in order to understand them clearly, it will be necessary to incorporate the testimony, the charge, and the exceptions, in the report of the case.

In considering the exceptions, it will not be necessary to follow the classification adopted by the appellant's attorneys.

### Exception 1

In order to ascertain whether there was error on the part of his Honor, the presiding Judge, in charging upon the facts, in violation of Section 26, Art. 5, of the Constitution, which provides that "Judges shall not charge juries in respect to matters of fact, but shall declare the law," it will be necessary to determine whether the defendant was holding the office of County Treasurer at the time he is

alleged to have violated the provisions of Section 544, *supra.* Section 440 of the Code of Laws, 1912, provides that—

"The Governor is authorized by, and with the advice and consent of the Senate, to appoint for each County in the State a County Treasurer, who shall hold office for two years and until his successor is appointed and qualified. * * *"

Section 11, Art. 1, of the Constitution, contains the provisions:

"No person shall be elected or appointed to office in this State for life or during good behavior, but the terms of all officers shall be for some specified period, except Notaries Public and officers in the militia."

This provision was construed in the case of *State v. Bowden,* 92 S. C., 393, 75 S. E., 866, by the Court en banc, and the principles therein announced, when applied to the admitted facts in the present case, unquestionably show that the defendant was the duly appointed and qualified Treasurer of Hampton County, at the time he received the money in question, and when his successor was appointed and qualified.

Under the admitted facts herein, the errors assigned by this exception were not prejudicial.

### EXCEPTION 18

The charge is incorrectly quoted in this exception; and the language used by his Honor, the presiding Judge, is free from error.

After careful consideration, we have not been able to find any prejudicial error in the other exceptions.

Affirmed.